*186 OPINION OF THE COURT
Bellacosa, J.
Defendant was convicted after a jury trial of four counts of sodomy in the first degree (Penal Law § 130.50 [1], [2]), charges arising out of his deviate sexual intercourse with a six-year-old boy who lived in defendant’s apartment building. The judgment was affirmed by the Appellate Division, and a Judge of this Court granted leave to appeal. The sole dispositive issue before this Court is whether defendant was deprived of effective assistance of counsel at the trial level.
At the close of the People’s evidence, defense counsel, without requesting any relief or a mistrial, notified the court that his request for all possible Rosario material had not been satisfied. He had decided to proceed during the trial, without objection as to any Rosario concerns, to full cross-examination of the People’s witnesses (see, People v Rosario, 9 NY2d 286, rearg denied 9 NY2d 908, cert denied 368 US 866).
After the jury returned its guilty verdict but before sentencing, a police officer’s memo book possibly containing statements made by the complainant and his mother, both of whom testified at trial, was delivered to defense counsel. Defendant’s lawyer reviewed the single page to see if it was potentially relevant and declared that it would have been of no evidentiary use or value. Specifically, defense counsel stated on the record that "there is absolutely nothing in the memo book that would have made any difference in terms of what I did or did not do, ask or did not ask and that’s about it.” There was no acknowledgement that it even technically qualified as Rosario material.
Defendant now argues that he was deprived of effective assistance of counsel (see, US Const 6th, 14th Amends; NY Const, art I, § 6), concentrating essentially on a claim that his trial attorney’s evaluation and representation was per se "meaningless” because counsel gave away an allegedly surefire new trial, Rosario reversal.
The intellectually disciplined dispositional path of this case must not veer from this Court’s long-standing, well-settled ineffective assistance of counsel analysis and authorities. In People v Baldi (54 NY2d 137), this Court held that when reviewing a claim of ineffective assistance of counsel, care should be taken "to avoid both confusing true ineffectiveness [of counsel] with mere losing tactics and according undue significance to retrospective analysis” (id., at 146 [emphasis *187 added]). The constitutional requirement of effective assistance of counsel will be satisfied when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation” (id., at 147 [emphasis added]; see also, People v Satterfield, 66 NY2d 796, 798-800). This protection does not guarantee a perfect trial, but assures the defendant a fair trial (see, People v Claudio, 83 NY2d 76, 80, citing United States v Cronic, 466 US 648, 658). To prevail on a claim of ineffective assistance, defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice (see, People v Benn, 68 NY2d 941, 942).
This defendant received a fair trial and was not denied his constitutional right to effective assistance of counsel. The totality of representation examined as of the time of representation, not retrospectively second-guessed four years later, supports this elementary conclusion. Moreover, the attorney’s decision not to press for a new trial at the postverdict stage of the criminal proceeding — assuming without having to decide in this case that a new trial was then procedurally and merit-wise available — based on a possible Rosario appellate point of argument, is another aspect of the attorney’s role at the trial level which fits distinctively within the very heart of the Rosario rule. Judge Fuld articulated that rule as a "right sense of justice” requiring defense counsels’ personal examination to "determine for themselves” whether a document may be helpful for cross-examination purposes (People v Rosario, 9 NY2d 286, 289, supra [emphasis added]; see, People v Ranghelle, 69 NY2d 56, 62). The Court emphasized this shift in focus and responsibility from the courts to defense attorneys preeminently because the nuances, features and scope of cross-examination "are certainly not as apparent to the impartial presiding judge as to single-minded counsel for the accused” (People v Rosario, supra, at 290). Defense counsel in this case got eventually to do precisely what Rosario directed. Neither the preverdict conduct of defense counsel nor his on-the-record evaluation and explanation prior to sentencing rise to the level of "egregious and prejudicial” conduct, especially since there can be no certainty at this juncture that a new trial was an available remedy at those stages of the trial proceedings, measured by the totality-of-meaningful-representation stan *188 dard necessary to prevail on an ineffective assistance of counsel claim.
For all this record reveals about defense counsel’s ultimate evaluation of the disclosed item, on the scene and in the circumstances at that postverdict stage of the criminal proceeding, defense counsel could have reasonably considered that his client’s interest would best be served by no further delay in the resolution of the case against the client. Any number of other professional strategic reasons or personal considerations affecting the defendant’s fair trial interests could also have informed the attorney’s professional evaluation and choice on how and why to proceed in the way chosen. The record does emphatically inform us, even as an appellate court reviewing the matter, of the defense lawyer’s assessment of the quality and nature of the ultimately disclosed item— "absolutely” useless. A plausible strategy might even have included advocacy for amelioration of sentence or some other nuanced advantage in the adversarial exchanges and context, all matters and features not knowable by trial or appellate Judges removed from the full range of choices and context exercised singularly by the trial lawyer for the defendant. In sum, Rosario was designed to insure that defense counsel, not Judges, should do the strategic viewing, weighing and exercising of the defendant’s fair trial advocacy interests in this regard (see, People v Rosario, 9 NY2d 286, 290, supra).
Even less persuasively, the rationale of the dissent proposes to establish a new New York analytic framework that an "unexplained error” by counsel is sufficient, by itself, to deprive defendant of effective assistance (dissenting opn, at 192). This Court has steadfastly and wisely adhered to an analytical approach and rule requiring all the evidence to be weighed in context and as of the time of complete representation at the trial level for resolving ineffective assistance of counsel claims (see, People v Baldi, 54 NY2d 137, 147, supra; see also, People v Rivera, 71 NY2d 705, 708, citing People v Droz, 39 NY2d 457). A substantial, single "blunder” could, of course, qualify, but that is not this case and that ought not be the newest per se orthodoxy. The dissent’s reliance on Murray v Carrier {All US 478) does not change our analysis. In Murray (supra, at 496), the Supreme Court stated that an isolated error of counsel can constitute ineffective assistance of counsel but only "if that error is sufficiently egregious and prejudicial,” i.e., that error was so serious that defendant did not *189 receive a "fair trial” (see, People v Claudio, 83 NY2d 76, 80, supra, citing United States v Cronic, 466 US 648, 655, supra).
In that context, this record further demonstrates that defense counsel represented his client diligently and vigorously during the course of the entire trial. Counsel exhaustively cross-examined the People’s witnesses and delivered opening and closing statements that were consistent with defendant’s defense (see, e.g., People v Hood, 62 NY2d 863, 865). Further, counsel was successful in having several counts of an extremely serious multiple count indictment dismissed. Indeed, the record shows that counsel exercised a single-minded devotion to his client’s best interests and representation. Thus, when viewed in its totality as of the time of trial, the attorney’s professional services at trial did not deprive this defendant of "meaningful representation” (People v Baldi, 54 NY2d 137, 146-147, supra). Facile hindsight or mere difference of view or approach with an exercise of professional judgment by defense counsel do not translate automatically into ineffective assistance of counsel qualifying as the denial of a fair trial. In the end, defendant has simply failed to satisfy the well-settled, high burden of showing that he was deprived of a fair trial and meaningful representation sufficient to warrant a reversal. We agree with the Appellate Division’s unanimous observation that:
"When counsel candidly denies having any use for the material when it is finally disclosed, it cannot be said that the defendant has any substantive right to be vindicated, and there is no basis in law or logic to order a new trial when there is no new issue to be tried. There is no basis in the record to controvert counsel’s conclusions, and neither can counsel’s representation be deemed incompetent merely because he did not pursue a concededly frivolous substantive claim as a basis for a new trial” (194 AD2d 439).
Therefore, we, too, conclude that no justification has been advanced justifying a new trial, to pursue anew a line of inquiry defense counsel evaluated and declared "absolutely” meaningless and valueless (see, People v Claudio, 83 NY2d 76, 80, supra).
Accordingly, the order of the Appellate Division should be affirmed.